United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 6, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 05-70043

———————————————

RONALD RAY HOWARD

                    Petitioner - Appellant

v.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION

                    Respondent - Appellee

———————————————————————————————————————

On Motion for a Stay of Execution
Appeal from the United States District Court
for the Southern District of Texas, Victoria
No. V-05-05

———————————————————————————————————————

Before KING, Chief Judge, and JOLLY and PRADO, Circuit Judges.

KING, Chief Judge:[*]

    Petitioner-Appellant Ronald Ray Howard has appealed the

district court's order denying his motion for a stay of

execution, and he has asked us for a stay of execution. For the

following reasons, we DENY Howard's motion for a stay of

execution.

————————————————————

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Howard was found guilty of capital murder in Texas state court and sentenced to death.  On direct appeal, the Texas Court of Criminal Appeals overturned his sentence, finding that the trial court erroneously dismissed a prospective juror over her ability to answer Texas's special issues.  Howard v. State, 941 S.W.2d 102, 127-29 (Tex. Crim. App. 1996).  After a second punishment phase, a new jury answered Texas's special issues in a manner again requiring the imposition of a death sentence. Again, the trial court sentenced Howard to death.  This time, the Texas Court of Criminal Appeals affirmed the judgment.  Howard v. State, No. 71,739 (Tex. Crim. App. Dec. 19, 2001) (unpublished). The United States Supreme Court later denied Howard's petition for certiorari.  Howard v. Texas, 535 U.S. 1065 (2002).

On May 5, 2003, after exhausting his state court remedies,[1] Howard filed a federal habeas petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Texas, alleging that his trial counsel provided ineffective assistance of counsel.  On March 19, 2004, the district court denied Howard's habeas petition and denied a

_____

[1]  While his second direct appeal was pending, Howard filed a state application for habeas relief.  The state habeas court entered findings of fact and conclusions of law recommending the denial of Howard's state habeas application.  The Texas Court of Criminal Appeals subsequently denied Howard's application.  Ex parte Howard, No. 48,825-01 (Tex. Crim. App. Feb. 6, 2002) (unpublished).

certificate of appealability ("COA") on all of his claims. Howard v. Dretke, No. V-03-48 (S.D. Tex. Mar. 19, 2004). On appeal, Howard requested that this court grant a COA only on the claim that his attorney provided ineffective assistance of counsel by not objecting during voir dire when the prosecutor informed potential jurors that a previous jury had sentenced him to death. On March 21, 2005, this court denied Howard's COA application, finding that he had failed to make a substantial showing of the denial of a constitutional right. See Howard v. Dretke, 125 Fed. Appx. 560, 561, 563, 566 (5th Cir. Mar. 21, 2005) (noting that a petitioner makes a substantial showing of the denial of a constitutional right by demonstrating that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong'" and concluding that "reasonable jurists could not debate the district court's conclusion that the state court did not unreasonably apply clearly established federal law when it found that Howard's trial counsel's performance was not deficient") (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)). Following our decision denying the COA, the mandate issued on March 21, 2005. The State of Texas scheduled Howard's execution for October 6, 2005, at 6:00 p.m. Central Daylight Time.

On October 4, 2005, Howard filed a motion in the United States District Court for the Southern District of Texas for

appointment of counsel pursuant to 21 U.S.C. § 848(q)(4)(B) and a stay of execution under 28 U.S.C. § 2251. The district court granted Howard's motion for appointment of counsel but denied Howard's motion for a stay of execution. Howard v. Dretke, No. V-05-05 (S.D. Tex. Oct. 4, 2005). In denying the stay, the district court determined that: (1) "Howard . . . fail[ed] to show that this Court has authority to stay his impending execution" because "[n]o federal habeas petition is pending before this Court"; and (2) "Howard fail[ed] to show a reasonable likelihood that he [would] prevail on his claims in the Supreme Court . . . . [and made] no persuasive showing that the Supreme Court would find that a COA should issue or even grant an out-of-time writ of certiorari." Id. On October 5, 2005, Howard filed this timely appeal challenging the district court's decision to deny the stay of execution. He subsequently filed a motion with this court asking for a stay of execution.

## II. DISCUSSION

### A. Standard of Review

This court reviews a district court's decision to grant or deny a stay of execution for abuse of discretion. See Brewer v. Johnson, 139 F.3d 491, 493 (5th Cir. 1998). Because a capital defendant's request for a stay is a request for the district court to enjoin the defendant's execution, this court has "jurisdiction to review any decision by the district court to

-4-

grant, continue, modify, refuse or dissolve an injunction."
Mines v. Dretke, 118 Fed. Appx. 806, 812, n.27 (5th Cir. Dec. 16, 2004) (noting that a COA is not required to review a district court's grant or denial of a motion for a stay of execution).

Alternatively, this court, if it has jurisdiction, can issue a stay of execution if we determine that "there is a reasonable probability that 4 members of the Supreme Court would consider the underlying issues sufficiently meritorious for the grant of certiorari and . . . there is a substantial possibility of reversal of [our] decision . . . ." 5TH CIR. R. 8.9 ("Stays to permit the filing and consideration of a petition for writ of certiorari ordinarily will not be granted."). See also Maggio v. Williams, 464 U.S. 46, 48 (1983).

**B. Analysis**

Howard's brief on appeal does not clearly state whether he is (1) challenging the district court's decision to deny the stay, or (2) asking this court to grant a stay of execution. Rather, Howard's brief generally states that he

> appeals to this Court, pursuant to McFarland v. Scott, 512 U.S. 849 (1994), In re Hearn, 389 F.3d 122 (5th Cir. 2004), and Rule 8.9 of the Internal Operating Procedures of this Court, seeking a stay of his imminent execution, so that newly-appointed counsel has time to file a petition for writ of certiorari, asking the Supreme Court to review the judgment of this Court.

Accordingly, we will address (1) whether the district court abused its discretion in denying the stay of execution, and

-5-

(2) whether this court can independently issue a stay of execution even though our mandate has issued.

## 1. District Court's Denial of the Stay of Execution

Underlying the district court's decision to deny the stay are two independent conclusions: (1) the district court lacked jurisdiction, and (2) Howard made no showing that he would likely prevail on the merits of his claims in the Supreme Court. First, after examining both McFarland v. Scott and 28 U.S.C. § 2251, the district court concluded that it lacked the authority to stay the execution. Specifically, the district court found that no federal habeas petition was pending before it, and thus under § 2251 of the Antiterrorism and Effective Death Penalty Act (AEDPA), it had no authority to stay Howard's execution.[2] See 28 U.S.C. § 2251 (2000) ("A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court . . . .") (emphasis added).

In McFarland v. Scott, the Supreme Court interpreted § 2251, which instructs when a federal judge may grant a stay of execution for a prisoner held by the state, in conjunction with § 2254 and § 2255 of the AEDPA to decide whether a district court

---

[2] Howard's claim is governed by the AEDPA because he filed his § 2254 petition on May 5, 2003, after AEDPA's April 24, 1996 effective date. See Fisher v. Johnson, 174 F.3d 710, 711 (5th Cir. 1999) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).

-6-

appointing counsel pursuant to § 848(q)(4)(B) had jurisdiction to stay an execution. McFarland v. Scott, 512 U.S. 849, 857-58 (1994). The Court concluded that "a district court has jurisdiction to enter a stay of execution where necessary to give effect to that statutory right [found in § 848(q)(4)(B)]." Id. at 859. Despite McFarland's seemingly broad pronouncement of jurisdiction, we must read the Court's decision in context and in light of our prior decisions. The Court's decision that the district court would have jurisdiction to stay an execution upon the filing of a motion for appointment of counsel was directly related to the fact that the petitioner's request for counsel initiated a "habeas corpus proceeding" before the district court under § 2251. See McFarland, 512 U.S. at 857-58 (noting that the petitioner argued that "his request for counsel in a 'post conviction proceeding' under § 848(q)(4)(B) initiated a 'habeas corpus proceeding' within the meaning of § 2251" before the district court and ultimately agreeing with the petitioner's position). In other words, in McFarland, the filing of the motion for appointment of counsel under § 848(q)(4)(B) actually initiated habeas corpus proceedings for § 2251 purposes, thus giving the district court the jurisdiction, under § 2251, to stay the execution. See id. at 858 (concluding that "[s]ection 848(q)(4)(B) expressly applies to any post conviction proceeding under section 2254 or 2255--the precise habeas corpus proceeding[s] that § 2251 involves" and reading these statutes

-7-

together to conclude that the motion for appointed counsel under § 848(q)(4)(B) starts the habeas corpus proceeding referred to in § 2251 so that the district court has jurisdiction to stay the execution) (alteration in original) (internal quotations omitted). In contrast to the petitioner in McFarland, here, as the district court recognized, Howard's motion was not directed at a pending or proposed habeas proceeding before the district court. Instead, Howard filed the § 848(q)(4)(B) motion with the intent to petition for an original application for habeas relief in the Supreme Court or an out-of-time petition to appeal this court's denial of the COA. Thus, unlike the district court at issue in McFarland, there was no pending habeas proceeding before the district court--nor contemplation of one--because the § 848(q)(4)(B) motion is not initiating a habeas corpus proceeding.

The district court's conclusion that it lacked jurisdiction is supported not only by a close reading of McFarland but also by our precedent. In Williams v. Cain, we held that when the habeas petition has been ruled on, the appellate mandate has issued, and the case is no longer before the court, "the only reasonable analysis is that the habeas petition is no longer pending before the district court, and the court therefore lacks jurisdiction to enter a stay under the clear terms of the statute." Williams v. Cain, 143 F.3d 949, 950 (5th Cir. 1998) (concluding that when a petitioner seeks a stay of execution pending the disposition of a

-8-

writ of certiorari, "he should seek that stay in the Supreme

Court itself").  See also Teague v. Johnson, 151 F.3d 291, 291

(5th Cir. 1998) (reaching the same conclusion).  Accordingly, we

do not think the district court erred (or abused its discretion)

when it concluded as a matter of law that it lacked jurisdiction.

The district court's second conclusion--that Howard did not

demonstrate that he was reasonably likely to prevail on his

claims in the Supreme Court--is also not an abuse of discretion.

The district court determined that, under the factors a court

must consider in granting a stay of execution,[3] "Howard's claims

did not meet the threshold standard for a COA by showing the

substantial denial of a constitutional right."  Howard, No. V-05-

05.  Both the district court and this court concluded that

Howard's claims failed to show the substantial denial of a

constitutional right, as required under the AEDPA to grant a COA.

See 28 U.S.C. § 2253(c)(2); see also Miller-El, 537 U.S. at 327

("A petitioner satisfies this standard by demonstrating that

jurists of reason could disagree with the district court's

---

[3]  "In deciding whether to issue a stay of execution, we are
required to consider four factors:
    (1) whether the movant has made a showing of likelihood
    of success on the merits, (2) whether the movant has
    made a showing of irreparable injury if the stay is not
    granted, (3) whether the granting of the stay would
    substantially harm the other parties, and (4) whether
    the granting of the stay would serve the public
    interest."
Buxton v. Collins, 925 F.2d 816, 819 (5th Cir. 1991), cert.
denied, 498 U.S. 1128 (1991).

resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."). Because we agree with the district court that Howard alleges no new constitutional violation from his previous application and makes no persuasive showing that the Supreme Court would grant relief on the merits, we conclude that the district court did not abuse its discretion. See Gonzales v. Crosby, __ U.S. __, 125 S. Ct. 2641, 2655 n.7 (2005) (Stevens, J., dissenting) ("A petition for certiorari seeking review of a denial of a COA has an objectively low chance of being granted. Such a decision is not thought to present a good vehicle for resolving legal issues, and error-correction is a disfavored basis for granting review . . . .").

## 2. Staying the Execution as an Original Matter

Either alternatively or in addition to his request that we reverse the district court's decision to deny the stay, Howard asks this court to stay the execution. Rule 8.9 of this circuit's internal operating procedures delineates the standards we use in deciding to stay an execution. Rule 8.9, however, is not a grant of jurisdiction. Rather, if this court has jurisdiction, Rule 8.9 sets forth when we will consider staying an execution to permit the filing and consideration of a petition for writ of certiorari. See 5TH CIR. R. 8.9 (allowing the court to issue a stay of execution when a reasonable probability exists

-10-

that four members of the Supreme Court would find the underlying issue sufficiently meritorious for the grant of certiorari and a substantial possibility of reversal of our decision exists).

Here, our mandate issued on March 21, 2005--over six months ago. Thus, while we do have jurisdiction to review the district court's decision to deny the stay, see 28 U.S.C. § 1292(a)(1), we do not have jurisdiction to independently stay Howard's execution. Our decision in Williams v. Cain echoes this conclusion. In Williams, we determined that "the McFarland rule . . . has nothing to say about the jurisdiction of [the] court to enter a stay pending disposition of certiorari when the habeas petition has already been ruled on, the appellate mandate has issued, and the case is no longer before the court in any fashion." Williams, 143 F.3d at 950. See also Teague, 151 F.3d at 291 ("[O]nce the appellate mandate issues, a habeas petition is no longer pending before the court of appeals, and we have no jurisdiction to stay proceedings under § 2251."). Accordingly, because our mandate issued over six months ago and Howard's case is no longer pending before this court, we therefore lack the jurisdiction to enter a stay under the clear terms of the AEDPA. See id. (noting that where the mandate has issued and the petitioner is seeking stay of his execution pending the disposition of a writ of certiorari in the Supreme Court, "the court therefore lacks jurisdiction to enter a stay"); see also 28 U.S.C. § 2251.

-11-

## C.    Statutory Right to Appointed Counsel

There is at least a question whether Howard's statutory right to have appointed counsel represent him throughout every subsequent stage of available habeas corpus proceedings, including an application for a writ of certiorari, may have been violated.  Under 21 U.S.C. §§ 848(q)(4)(B),

> [i]n any post conviction proceeding under section 2254 or 2255 of title 28 seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation . . . shall be entitled to the appointment of [counsel] . . . .

The statute further provides:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process . . . .

21 U.S.C. § 848(q)(8) (2000).  According to Howard's affidavit, his most recent appointed counsel, Steve Baxley, failed to inform Howard that (1) this court had denied Howard's COA, (2) he no longer represented Howard, and (3) he did not intend to file a petition for writ of certiorari with the Supreme Court.

Howard has had a string of counsel represent him throughout his federal habeas corpus proceedings.  Keith Weiser represented Howard on his initial proceedings before the district court.  Howard v. Dretke, No. V-02-01 (S.D. Tex. Jan. 17, 2002).  However, the district court granted Weiser's motion to withdraw from representation after the district court's proceedings.

-12-

Howard v. Dretke, No. V-03-48 (S.D. Tex. Apr. 14, 2004). The district court then appointed Baxley "to represent Howard throughout the remainder of his federal proceedings." Id. In September 2005, William Zapalac, counsel to the clerk's office of United States Court of Appeals for the Fifth Circuit, e-mailed Baxley, "inquiring whether [Baxley] intend[ed] to file anything in this court on behalf of Mr. Howard prior to his scheduled execution." E-mail from William Zapalac, Counsel to the U.S. Court of Appeals for the Fifth Circuit Clerk's Office, to Steve Baxley (Sept. 21, 2005, 11:56:00 CDT). Baxley's complete response follows: "My understanding is that I no longer represent Mr. Howard and that I was only appointed for the limited purpose of filing an appeal regarding the denial of the certificate of appealability." Id. Judging by his response to this court, Baxley may not have understood that he had any obligation beyond filing an appeal regarding the district court's denial of a COA. That said, we do not believe that there is any reasonable probability that, had Baxley filed a petition for a writ of certiorari, the writ would have been granted or a substantial possibility that our decision to deny a COA would have been reversed.

## III. CONCLUSION

For the foregoing reasons, we DENY Howard's motion for a stay of execution.

-13-