RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN FAUTENBERRY,

        *Petitioner-Appellant,*

     *v.*

BETTY MITCHELL, Warden,

        *Respondent-Appellee.*

No. 09-3819

> Appeal from the United States District Court
> for the Southern District of Ohio at Cincinnati.
> No. 00-00332—James L. Graham, District Judge.

Submitted:  July 7, 2009

Decided and Filed:  July 10, 2009

Before:  BATCHELDER, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:**  Dennis Lyle Sipe, BUELL AND SIPE CO., L.P.A., Marietta, Ohio, Tyson Fleming, Randall L. Porter, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, for Appellant.  Justin M. Lovett, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

    BATCHELDER, J., delivered the opinion of the court, in which GILMAN, J., joined. MOORE, J. (pp. 8-9), delivered a separate opinion concurring in the judgment.

---

**OPINION**

---

    ALICE M. BATCHELDER, Circuit Judge.  John Fautenberry is scheduled for execution by the state of Ohio on July 14, 2009.  He appeals the district court's denial of his motion under 18 U.S.C. § 3599(f) for funds to hire a neuropsychologist to assist in the preparation of his state clemency petition.  Because the district court did not abuse its discretion in holding that such expert assistance is not reasonably necessary, we **AFFIRM**.

**I.**

Fautenberry has exhausted all available appeals, including both state and federal habeas review.  *See Fautenberry v. Mitchell*, 515 F.3d 614, 621-22 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 412 (2008).  On June 2, 2009, Fautenberry filed *ex parte* a sealed motion under 18 U.S.C. § 3599(f) for funds to compensate his counsel and to retain neuropsychologist Dr. Michael Gelbort for the preparation of his state clemency petition.

In support of his motion for expert funds, Fautenberry submitted the affidavit and report of neuropsychologist Dr. Jeffrey Smalldon, who evaluated Fautenberry  during his state post-conviction proceedings in 1996 and concluded that he had a "mild — although by no means insignificant" degree of brain impairment.  Smalldon wrote that Fautenberry's type of brain impairment can "cause serious problems in such areas of day-to-day functioning as impulse control; modulation of affect; planning; problem-solving; and the capacity to tolerate frustration."  Additionally, Fautenberry presented:  affidavits from family friends Kenneth and Louise Corcoran, also taken in 1996, providing anecdotal evidence of head injuries that Fautenberry had suffered as a child; medical records documenting injuries, including head injuries, that Fautenberry had sustained; and Dr. Gelbort's resume.

At the district court's direction, Fautenberry filed a proposed clemency budget, also *ex parte* and under seal, on June 17, 2009.  On June 23, 2009, the court issued a sealed order denying Fautenberry's motion for funds to hire Dr. Gelbort.  Specifically, the court held that Fautenberry's motion was "long on the head injuries that [he] suffered and the manner in which those injuries likely affected his day-to-day behavior . . . but short on an explanation for why *another* neuropsychological assessment is reasonably necessary in this case."  On June 25, 2009, the court approved the remainder of the expenses listed in Fautenberry's proposed budget.  On July 1, 2009, Fautenberry filed his notice of appeal; in his brief filed before this Court on July 7, 2009, he asks us to vacate the district court's order, remand the case for the authorization of funding, and stay his execution so that he can present Dr. Gelbort's findings to the governor of Ohio.

**II**.

Fautenberry claims that the district court erred by denying his request, made pursuant to 18 U.S.C. § 3599(f), for funds to retain a certain neuropsychologist to assist his attorney with the preparation of his state clemency petition.  Section 3599(f) provides, in pertinent part:

> Upon a finding that investigative, expert, or other services *are reasonably necessary* for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, *the court may authorize* the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).

18 U.S.C. § 3599(f) (emphasis added).

Due to the discretionary language in § 3599(f), we review the district court's decision for an abuse of discretion.  *Cf. Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009); *Rosales v. Quarterman*, 565 F.3d 308, 312 (5th Cir. 2009).  "A district court abuses its discretion where it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (en banc) (internal quotation marks omitted).  Moreover, we will find that a district court has abused its discretion only when we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007).

The district court considered Fautenberry's request in light of § 3599(f) and concluded, based on Fautenberry's motion and supporting exhibits, that the service requested was not "reasonably necessary" because Fautenberry had provided no reasons to explain why it would be necessary:

> [Fautenberry]'s motion, however compelling at first glance, is long on the head injuries that [Fautenberry] suffered and the manner in which those injuries likely affected his day-to-day behavior in a number of facets, but short on an explanation for why *another* neuropsychological assessment is reasonably necessary in this case.  It is apparent from [Fautenberry]'s own exhibits that Dr. Smalldon performed a comprehensive neuropsychological evaluation of [Fautenberry] in 1996.

Nowhere in [Fautenberry]'s motion for funds to retain the services of Dr. Michael Gelbort does [Fautenberry] allege or even suggest that Dr. Smalldon's evaluation was faulty, incomplete, outdated, or otherwise unreliable. Nowhere does [Fautenberry] allege or even suggest how a new neuropsychological evaluation by Dr. Gelbort now might assist the Ohio Adult Parole Authority or the Governor of the State of Ohio in determining whether [Fautenberry] is entitled to clemency.

Having reviewed [Fautenberry]'s motion and supporting exhibits, as well as the decisions issued by this [c]ourt and the Sixth Circuit denying [Fautenberry]'s request for habeas corpus relief, this [c]ourt finds itself unable to even conjecture why the services of Dr. Gelbort are reasonably necessary for [Fautenberry] to prove his case for clemency.

*Fautenberry v. Mitchell*, No. 1:00-cv-332, *4 (S.D. Ohio June 23, 2009) (paragraph breaks inserted).

On appeal, Fautenberry does not contend that the district court "applie[d] [an] incorrect legal standard [or] misapplie[d] the correct legal standard"; rather, he contends that the district court "relie[d] upon clearly erroneous findings of fact." *See Getsy*, 495 F.3d at 310. Specifically, Fautenberry argues on appeal that the district court improperly relied on the 1996 examination:

[T]he District Court abused its discretion when it denied the [request] based upon the fact that Mr. Fautenberry had previously been examined by a neuropsychologist in 1996 [i.e., Dr. Jeffrey L. Smalldon, Ph.D.]. Mr. Fautenberry's mental condition may well have changed in the last 13 years. Mr. Fautenberry wished to present to the Parole Board and the Governor an updated evaluation to demonstrate th[at] he would not be a threat if his sentence w[ere] reduced to life.

Apt.'s Br. at 7 (citations omitted). Fautenberry continues:

[T]he District Court abuse[d] its discretion when it determined that Mr. Fautenberry had not proven that the facts supported the granting of funding. Given Mr. Fautenberry's history of head trauma, and Dr. Smalldon's post conviction diagnosis of brain impairment, the District Court abused its discretion when it denied [Fautenberry's] motion for funding for a neuropsychologist.

Apt.'s Br. at 10 (citations omitted). Fautenberry goes on to argue that the court's reliance on the 1996 evaluation was erroneous because that evaluation is incomplete, outdated, and unreliable.

But, based on the nature of this case and the nature of our review (abuse of discretion), we are not called upon to decide whether the 1996 evaluation was actually incomplete, outdated, or unreliable. *See Workman v. Bredesen*, 486 F.3d 896, 923-24 (6th Cir. 2007) (Cole, J., dissenting) ("[S]o long as the district court acted within its sound discretion, we may not reverse its judgment even if we would have decided the matter differently."). The question we must decide in this appeal is whether the district court, acting on the information before it at the time, "committed a clear error of judgment." *See Ford Motor*, 487 F.3d at 468. That is, did Fautenberry provide the district court with the arguments he now presses on appeal and, if so, do we have a "definite and firm conviction" that the district court reached the wrong conclusion in its assessment of those arguments. *See id*.

In the text of his motion to the district court ("John Fautenberry's Motion for Funds" dated June 2, 2009), Fautenberry made only two references to Dr. Smalldon and the 1996 evaluation:

> "Dr. Smalldon, who evaluated Mr. Fautenberry in post-conviction[,] unequivocally concluded, 'It is my opinion, offered with reasonable psychological certainty, that Mr. Fautenberry is brain impaired.'"

And:

> "Given Mr. Fautenberry's history of head trauma, Dr. Smalldon's post conviction diagnosis of brain impairment, and the findings of the Sixth Circuit, the approval of funding for a neuropsychologist is warranted in this case."

Neither of these references indicates that Dr. Smalldon's evaluation was incomplete, outdated, or unreliable. Fautenberry also appended that evaluation (which is 15 pages long) to his motion.

The district court stated: "It is apparent from [Fautenberry]'s own exhibits that Dr. Smalldon performed a comprehensive neuropsychological evaluation of [Fautenberry] in 1996." Based on a review of Fautenberry's motion and exhibits, we cannot find this conclusion unreasonable.

The district court offered two other statements in support of its decision:

> "Nowhere in [Fautenberry]'s motion . . . does [he] allege or even suggest that Dr. Smalldon's evaluation was faulty, incomplete, outdated, or otherwise unreliable."

And:

> "Nowhere does [Fautenberry] allege or even suggest how a new neuropsychological evaluation by Dr. Gelbort now might assist the Ohio Adult Parole Authority or the Governor of the State of Ohio in determining whether [he] is entitled to clemency."

Both of these statements are true.

Fautenberry did not argue to the district court — nor did he present evidence or authority that might have supported such an argument — that the results of Dr. Smalldon's 1996 evaluation are outdated due to advancements in the field of neuropsychology or changes in Fautenberry's condition, or that a new evaluation might show that Fautenberry now suffers brain impairment more severe than that diagnosed 13 years ago. Fautenberry did not attempt to show that Dr. Gelbort's expertise or methods would lead to a more accurate diagnosis, nor did he point to any facts suggesting that his brain impairment has worsened since his last evaluation. Fautenberry advanced no evidence from which the district court could find that Dr. Gelbort's evaluation would not be duplicative of information already available to the state executives entertaining his clemency petition.

Finally, the district court said: "this [c]ourt finds itself unable to even conjecture why the services of Dr. Gelbort are reasonably necessary for [Fautenberry] to prove his case for clemency." Reading Fautenberry's motion to the district court in light of his current arguments on appeal, we can now understand that Fautenberry wanted Dr. Gelbort to provide an "updated evaluation." But we can also understand that, without the benefit of Fautenberry's appellate brief, the district court was left without any explanation as to why a new assessment was "reasonably necessary," particularly in view of the fact that Fautenberry had appeared to place such emphasis and reliance on Dr. Smalldon's 1996 evaluation. If the district court was misled, as Fautenberry now claims, it was misled because Fautenberry misled it or failed to show it the way. We cannot conclude that the district court reached the wrong conclusion based on the information before it at the time.

Based on the foregoing, we must conclude that the district court did not abuse its discretion in denying Fautenberry's request for fees pursuant to § 3599(f). This claim of error lacks merit.

## III.

Fautenberry has asked this Court for a stay of execution to permit him to obtain the neurospsychological examination and then to present the results to the governor.[1] He has not, however, cited any legal authority upon which we could base a stay of the State's right to execute its judgment. Although "some *minimal* procedural safeguards" may apply to state clemency proceedings, allowing federal judicial intervention where "a state official flipped a coin to determine whether to grant clemency" or "arbitrarily denied a prisoner any access to its clemency process," *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring) (emphasis in original), we are not presented with such a situation here. Moreover, our determination that the district court did not abuse its discretion in denying the motion for appointment of the expert moots any claim for a stay.

## IV.

Accordingly, we **AFFIRM** the district court's order denying funding for an appointed neuropsychologist in Fautenberry's state clemency proceedings, and we **DENY** Fautenberry's motion for a stay of execution.

---

[1] As of this writing, Fautenberry has not filed a motion for a stay of execution with the district court. He did ask for leave to file such a motion under seal, which the district court denied on July 7, 2009, but he has not yet filed for a stay itself.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. Because an accurate understanding of John Fautenberry's current mental state is essential to a determination of whether he is entitled to clemency, I believe that retention of a neuropsychologist is reasonably necessary for Fautenberry's representation during his clemency proceedings. Fautenberry has a history of head trauma and suffers from significant brain impairment, part of which was identified by a neuropsychological evaluation performed in 1996. Now, thirteen years later, it is important that the Parole Board and the Governor have a complete picture of Fautenberry's current mental state, including whether he still suffers from brain impairment. A stale evaluation performed in 1996 does not serve this purpose. Even without evidence of specific changes, which, in any event, could be discovered only through a current evaluation, it is obvious that Fautenberry's mental state would have changed in the past thirteen years he has spent on death row.

The Supreme Court recently made clear "that [18 U.S.C.] § 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Harbison v. Bell*, --- U.S. ---, 129 S. Ct. 1481, 1491 (2009); *see* 18 U.S.C. § 3599(e). As part of this representation, "the court may authorize the defendant's attorneys to obtain" expert services "[u]pon a finding that [such] services are reasonably necessary for the representation of the defendant." § 3599(f). Because a current picture of Fautenberry's mental state clearly is important to determining whether he should be executed, an updated neuropsychological evaluation is reasonably necessary for his representation. The majority is correct, however, that Fautenberry did not present this argument to the district court. I therefore cannot say that the district judge abused his discretion based on the record before him. Although I would not foreclose Fautenberry from presenting

new arguments to the district court, I am constrained, based on this record and our standard of review, to concur in the judgment.